IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1996 SESSION

FILED

December 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| STATE OF TENNESSEE | )C.C.A. No. 03C01-9510-CR-00316 |
| | ) |
| Appellee, | ) Hamilton County |
| | ) |
| V. | ) Hon. Douglas A. Meyer, Judge |
| | ) |
| WESLEY CHRISTOPHER PITTMAN | ) (Voluntary Manslaughter) |
| | ) |
| Appellant, | |

FOR THE APPELLANT:

Jerry H. Summers
Attorney at Law
500 Lindsay Street
Chattanooga, Tn. 37403

FOR THE APPELLEE:

Charles W. Burson
Attorney General and Reporter
Darian B. Taylor
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tn. 37243

William H. Cox
District Attorney General
H. C. Bright
Assistant District Attorney
Courts Building
Chattanooga, Tn. 37402

OPINION FILED: _____

AFFIRMED IN PART, MODIFIED IN PART AND REMANDED

CHARLES LEE, Special Judge

## O P I N I O N

The defendant, Wesley Christopher Pittman, was originally indicted for first degree murder in the shooting death of the victim Johnny Labron Walker. Upon agreement with the state, the defendant was allowed to enter a best interest, nolo contendere plea to a reduced charge of voluntary manslaughter. The Defendant was sentenced by the trial court to the maximum sentence of six years as a Range I Standard Offender. All forms of alternative sentencing were denied. The defendant now appeals both the length of his sentence and the denial of alternative sentencing.

## I. FACTUAL BACKGROUND

This case represents one of many instances in which a trial judge is placed in the unenviable position of deciding the facts of a case in a sentencing hearing without the benefit of a full-blown trial. The result is a record that does not present a unified set of facts, but instead paints two different pictures in such stark contrast that they could have arisen from entirely separate lawsuits.

The state by its indictment and its position during the sentencing hearing presents a picture of perhaps first degree murder and more likely second degree murder. The defendant presents a picture of at best an accident and at worse a reckless homicide. Rather than flush out the facts in a trial, the state and the defendant compromised in a plea bargain thereby thrusting upon the trial judge the duty of "doing justice" in a sentencing hearing.

During the sentencing hearing , the trial court heard from only one witness, the defendant, regarding the circumstances surrounding the death of the victim. The defendant testified that the shooting of the victim was an accident. However, the parties agreed to introduce as exhibits statements taken from various individuals who purported to witness the events that led to the death of the victim. From these statements one can glean that the facts leading to the death of the victim are truly tragic.

The victim and the defendant were both teenagers on February 12, 1994 and had been friends. Each were not living under any direct parental supervision. The victim had been asked to leave his home and had no place to live. The defendant was living with several other young people in the home of his slightly older sister and had agreed that the victim could stay in the house until he could find a more permanent home. On the tragic night of February 12, 1994, the defendant had consumed a considerable amount of alcohol. During the late evening hours several young people congregated at the residence of the defendant. In addition to alcohol, other drugs were available to those present.

During the course of the evening, at least two firearms were displayed. The defendant had a hand gun which he had acquired approximately one week before. He was reported to have pointed this gun at several persons at the residence. Never was the victim reported to have possessed either of the firearms. With several other persons in the room the defendant is reported to have aimed the firearm directly at the unarmed victim. The firearm discharged striking the victim in the head. There is some dispute as to whether the two had exchanged words before the shooting.

## II.  LENGTH OF SENTENCE

Appellate review of a sentence is de novo, with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1990 Repl.). The appellant has the burden of establishing that the sentence imposed by the trial court was erroneous. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); State v. Fletcher, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991). In determining whether the appellant has carried this burden, this court must consider: (1) The evidence received at the sentencing hearing;  (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) any statement the defendant wishes to make in his own behalf about sentencing.  Tenn. Code Ann. § 40-35-210 (1995 Supp.).  The minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors.

The trial court found the following enhancing factors to be present: (1) that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; (2) that the defendant possessed or employed a firearm during the commission of the offense; (3) that the defendant had no hesitation about committing a crime when the risk to human life was high.

In finding these enhancing factors the trial court implicitly rejected the defendant's theory of accidental shooting. However, the trial court made no explicit finding of fact either accepting or rejecting the defendant's theory of reckless homicide or the state's theory of murder.

Since the defendant pointed a firearm at not only the victim but others during the evening, a logical conclusion to explain his actions was the excitement such actions generated.

The use of a firearm was not an element of the offense. See State v. Shelton, supra; State v. Junior Belcher, Hamblen County No. 03-C-01-9110-CR-00352 (Tenn. Crim. App., Knoxville, April 10, 1992) (shotgun used to kill the victim); State v. Christopher Coffee, Davidson County No. 01-C-01-9103-CR-00066 (Tenn. Crim. App., Nashville, October 10, 1991) (pistol used to kill the victim); State v. James K. Boykin, Jr.., Overton County No. 01-C-01-9106-CC-00174 (Tenn. Crim. App., Nashville, October 2, 1991) (assault rifle and shotgun used to kill the victim); State v. Jerry E. Cook, Monroe County No. 117 (Tenn. Crim. App., Knoxville, August

16, 1989), per. app. denied, November 6, 1989 (butcher knife used to kill the victim).

Finally, where a high risk to human life is established with facts separate from those necessary to establish an element of the offense, the enhancement factor is not an essential element of the offense and may be applied if supported by the facts. State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). Several other individuals were in close proximity to the victim at the time the firearm was discharged.

The facts of this case fully support the trial court's finding as to each enhancement factor.

As mitigating factors the trial court found (1) that because of the defendant's youth he lacked substantial judgment in committing the offense; (2) the defendant had no criminal record and (3) the defendant displayed remorse for his actions.

The defendant complains that the trial court inappropriately weighed the enhancing factors in relation to the mitigating factors in meting out the maximum sentence. It is apparent from the record that the trial court gave great weight to the circumstances of the use of a firearm in this case. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, supra; State v. Moss, 727 S.W.2d 229 (Tenn. 1986). In determining an appropriate sentence, the court is not bound by the offense for which the defendant was convicted, except as to the possible range, and

may look to the "nature and characteristics" of the defendant's actual misconduct in setting a sentence within that range. State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983).

We find no abuse of discretion in the trial court's decision that the enhancing factors present in this case so far outweigh the mitigating factors as to warrant the maximum sentence of six years.

## III. DENIAL OF ALTERNATIVE SENTENCE

While the trial court explained its reasons for setting the range of sentence on the record the same cannot be said for explaining its rationale for denying all forms of alternative sentencing. Regarding alternative sentencing the trial court stated:

> I have considered, as I must under the law, alternative forms of punishment and I agree with Mr. Barry that we do have to educate people, but first we have to have these people accept their punishment for what they've done.

Earlier the trial court noted:

> And the one that Mr. Bright has touched on is the one that does come closest of what has to be done by the courts of this state if we are going to get a handle on the use of guns by young people and that is confinement is necessary to avoid depreciating the seriousness of the offense, and also confinement in these type cases where young people use guns is to provide an effective deterrent to others likely to carry guns. So it is -- that is the thing that this court has to consider.

However, regarding the defendant the court observed:

> I don't really think we have to lock him up today to restrain him. I don't think that he'll hurt anybody else, and as I say, its not necessary to restrain him but I do believe that it is necessary to confine him.

7

From its comments, clearly the trial court found the need for general deterrence alone was justification for the denial of alternate sentencing. It is however what the trial court did not say which creates difficulty for this reviewing court.

Deterrence can rarely be the sole reason for the denial of an alternate sentence. State v. Cummings, 868 S.W.2d 661 (Tenn. Crim. App. 1992); State v. Hartley, 818 S.W.2d 370 (Tenn. Crim. App. 1991). Because it is a factor in every criminal case, the denial of probation or any other alternative sentence based upon deterrence alone must be supported by evidence indicating some special need or consideration relative to that jurisdiction which would not be addressed by the normal deterrence inherent in any criminal penalty. State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987); State v. Vance, 626 S.W.2d 287, 290 (Tenn. Crim. App. 1981); State v. Horne, 612 S.W.2d 186, 187 (Tenn. Crim. App. 1980).

Denial of probation is occasionally justified solely upon the circumstances of the offenses when they are of such a nature as to outweigh all other factors favoring probation. Tenn. Code Ann. § 40-35-103(1)(B) (1991); State v. Fletcher, supra. Before the nature and circumstances of the offense alone may justify the denial of probation, the crime must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." State v. Travis, 622 S.W.2d at 534.

In making sentencing decisions trial judges may look to the offense as

it was committed, not to textbook definitions of the crime, State v. Ford, 643 S.W.2d 913, 915 (Tenn. Crim. App. 1982), and may "look behind [a] plea bargain and consider the true nature of the offenses committed." State v. Hollingsworth, supra.

The record is silent regarding some special need or consideration relative to the jurisdiction of the trial court. Further the trial court made no finding that this offense was especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree. Nor did it suggest that it accepted the state's theory of the offense thereby giving it the authority to look behind the plea bargain.

Because the record does not affirmatively show that the trial court considered the sentencing principles and all relevant facts and circumstances, our review of the sentence as it relates to alternative sentencing is de novo without a presumption of correctness. State v. Ashby, supra.

The defendant has been convicted of a Class C Felony. Relying on Tenn. Code Ann. § 40-35-102(6) (1991 Supp.), he argues that he is presumed to be a favorable candidate for a sentencing alternative to confinement, absent evidence to the contrary. However, he fails to take Tenn. Code Ann. § 40-35-102(5) into account.

Tenn. Code Ann. § 40-35-102(6) reads as follows:

A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a

Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. (emphasis added)

It is apparent from the plain language of the statute that not all mitigated or standard offenders who have committed a Class C, D, or E felony are presumed candidates for alternative sentencing. If the offender falls within the parameters of subdivision (5), he or she does not enjoy the presumption.

Tenn. Code Ann. § 40-35-102(5) reads as follows:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

In considering whether one falls into the parameters of subsection (5), Judge Hayes noted,"This means that the defendant cannot have a criminal history evincing either "clear disregard for the laws and morals of society" or "failure of past efforts at rehabilitation." State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App. 1995), perm. to appeal denied, (Tenn. 1995)(citing State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993). In addition to the two factors cited by Bingham the statute provides that those offenders committing "the most severe offenses" may not be eligible for the presumption. Therefore, if an offender has committed (1) a most severe offense or (2) possesses a criminal history evincing a clear

10

disregard for the laws and morals of society or (3) a history evincing failure of past efforts at rehabilitation, he or she is not statutorily presumed to be eligible for alternative sentence.

The question of what constitutes a most severe offense for purposes of determining if an offender is entitled to the presumption of alternative sentencing has not been addressed by this court. The state has previously argued that in certain cases, an offender should automatically be denied alternative sentencing because of the serious nature of an offense absent a showing of exceptional circumstances. See generally Bingham, supra; State v. Robert Allen Torgeson, Giles County No. 01-C-01-9312-CC-00415 (Tenn. Crim. App., Nashville, October 25, 1994); State v. Michael T. Sullivan and Simone T. Summers, Davidson County No. 01C01-9302-CR-00053 (Tenn. Crim. App., Nashville, October 16, 1993;) State v. Beverely Wannel George, Knox County No. 03C01-9207-CR-00248 (Tenn. Crim. App., Knoxville, January 7, 1993. These and other cases stand for the proposition that an offender may not in most cases be denied probation based solely on the nature of offense. They do not, however, address the question of whether the offender may be denied the presumption for alternative sentencing based upon the nature of the offense.

Some guidance may be found in determining what may constitute a severe offense in the context of Tenn. Code Ann. § 40-35-102(5) from other cases in which complete alternative sentencing has been denied. In State v. Butler, 880 S.W.2d 395 (Tenn. Crim. App.

11

1994) a case similar to appellant's case, Judge Tipton observed that "[T]he voluntary combining of intoxication with dangerous instrumentalities is a matter of serious public concern and the defendant's conduct created sufficiently serious circumstances so as to deny full probation." One may conclude that the taking of a life which resulted from the combining of intoxicants and deadly weapons is a most severe offense.

In his dissent in State v. Robert Allen Torgeson, supra, Judge Wade seemed to go even further:

Even though our current statute was enacted in 1989, the case law established prior to that date has consistently been used for guidance. Among the most important of those principles is that extraordinary circumstances must be shown in order to justify a grant of probation when a human life has been taken as the result of a criminal offense. The nature and circumstances of the crime, even if a Class E felony, are often so reprehensible as to militate against the grant of probation. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring the grant. (citations omitted)

The defendant in this case intentionally used a deadly weapon while under the influence of an intoxicant that resulted in the senseless loss of human life. While we do not find this to be an intentional killing, we do find the circumstances of this tragedy to be such as to go beyond mere criminal negligence. This is a most severe offense as envisioned by the legislature in Tenn. Code Ann. § 40-35-102(5). Even though the defendant has no appreciable criminal record and neither are there indications of failure of past efforts at rehabilitation, because he has committed a most severe offense, he is not presumed to be a candidate for alternative sentencing.

12

The burden of proof in establishing suitability for probation remains with the defendant. State v. Russell, 773 S.W.2d 913 (Tenn. 1989); Frazier v. State, 556 S.W.2d 239 (Tenn. Crim. App. 1977); Tenn. Code Ann. § 40-35-303(b). Among the factors to be considered are: (1) the nature and circumstances of the offense; (2) the defendant's criminal record, social history and present condition; and (3) the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285 (Tenn. 1978).

Militating in favor of alternative sentencing are the facts that the defendant is nineteen years old and has no prior criminal history either as an adult or as a juvenile. Although he dropped out of school, he has taken the initiative of obtaining a G.E.D. and expressed a desire to continue his education through vocational training. He is in fair health but he has received some mental health counseling because of this offense. His employment history is sporadic. However, because of his age he has had insufficient time to display any stability associated with an employment history. He appears extremely remorseful over his actions. He has demonstrated his ability to conform his conduct consistent with any orders of the court in that he has been on house arrest as a condition of his bond without event.

Although the defendant presents proof that he is amenable to rehabilitation, still we can not ignore that his acts resulted in the senseless loss of human life. Accordingly, we determine that the defendant shall be

13

confined in the County Workhouse for nine months and the remainder of his sentence shall be suspended and served upon supervised probation for a period of ten years. The first two years of probation is to be intensive probation should that program be available. In addition to any other reasonable conditions of probation imposed by the trial court, the defendant shall not consume alcohol in any form during his probation and shall be responsible for the reasonable funeral expenses of the victim as determined by the trial court. Furthermore, the defendant shall perform two hundred hours of public service work. We suggest but do not make a condition that this public service work be in the form of presentations to youth groups on the dangers of combining alcohol and firearms. Eligibility, if any, for other programs or work release during confinement or for earlier release from confinement shall be determined by the trial court upon proper motion.

The sentence is affirmed, but modified and the case is remanded to the trial court for entry of an appropriate judgment in accordance with this opinion.

_____
Charles Lee, Special Judge

CONCUR:


_____
Paul G. Summers, Judge


_____
Joseph M. Tipton, Judge

14

FILED

December 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,           )
                                    )
     Appellee,           )      No. 03C01-9510-CR-00316
                                      )
                                    )      Hamilton County
v.                           )
                                    )      Honorable Douglas A. Meyer, Judge
                                    )
WESLEY CHRISTOPHER PITTMAN,  )       (Voluntary Manslaughter)
                                    )
     Appellant.          )

## CONCURRING OPINION

I concur in all respects, save one, with the majority opinion. The majority opinion indicates that there is not a presumption for alternative sentencing if, to begin with, the offense is a "most severe" one or if the defendant possesses a criminal history evincing "clear disregard for the laws" or "failure of past efforts at rehabilitation." See T.C.A. § 40-35-102(5). I acknowledge that T.C.A. § 40-35-102(6) reads that way when viewed only in conjunction with subsection (5). However, given the developed case law relying on the very similar factors provided for imposing confinement under T.C.A. § 40-35-103(1) to rebut the presumption, there is no reason to change the analysis presently being used.

In fact, the majority opinion's analysis changes nothing in practice. This is because whether the factors are viewed to foreclose the use of the presumption or to rebut the presumption already applied, the burden of going forward with the relevant proof and the ultimate result will always be the same. That is, the state is always going to have to show that the evidence proves one or more of the confinement factors --

15

whether viewed under -102(6) or -103.  And once such is proved, alternative sentencing, as a presumption, is not going to exist.

Thus, I believe that <u>State v. Ashby</u>, 823 S.W.2d 166 (Tenn. 1991), provides the proper means by which the trial court should determine, and the appellate court should review, whether alternative sentencing is appropriate in any given case.  Otherwise, I concur in the majority opinion.

_____
Joseph M. Tipton, Judge